DOUGHERTY, J.T.C.
The issue in the Complaint filed in this matter was whether Charles A. Sabino (Taxpayer) and Dolores C. Sabino (collectively, Taxpayers) were entitled to deduct certain items in the computation of their Gross Income Tax category “distributive share of partnership income”. The term “distributive share of partnership income” is set out at N.J.S.A SJAifi-Kk).[1]
The items of deduction in question fall into two categories: the Direct Expenses, which consist of unreimbursed expenses of a partner; and the contributions, which constitute a partner’s share of payments characterized for Federal income tax purposes as deductible under the provisions of § 170 of the Internal Revenue Code of 1986 (IRC).
The facts underlying the original controversy were not complicated. During 1985, Charles A. Sabino was actively engaged in the business of accountancy as a partner of Peat Marwick Mitchell *490 & Company (Peat Marwick). Peat Marwick was and continues to be a partnership formed and existing under the laws of the State of New York. Each of Peat Marwick’s 1400 partners[2] was allocated a percentage share of partnership income and a percentage share of partnership expenses under the terms of the written agreement among them (Partnership Agreement).
Taxpayers have asserted that the Partnership Agreement also provided that certain expenses incurred individually by a partner in the conduct of partnership business would be paid directly by that partner and, in turn, that partner would be “allocated” any available income tax deduction for such direct expenditure. These expenses would not be reimbursed by Peat Marwick.
In 1985 Taxpayer incurred the following expenses, which it was claimed were incurred in the conduct of Peat Marwick’s (ie. the partners’) business: (a) $3,513 of vehicle expenses; (b) $80 of parking expenses and tolls; (c) $600 of travel away from home expenses including meals, lodging, air travel, car rentals and taxi expenses; and (d) $8,509 for entertainment, gifts and other business expenses. Peat Marwick reimbursed a portion of these expenses, totalling $5,214. The balance of $7,488 (the Direct Expenses) were not reimbursed to Taxpayer.
For its 1985 tax year, Peat Marwick made payments (the Contributions) to a number of organizations which qualified as “charitable organizations” under the provisions of IRC § 501(c)(3), including various educational institutions and the Peat, Marwick, Mitchell Foundation.[3] Under the terms of the Partnership Agree *491 ment, Taxpayer’s proportionate share of the Contributions was $3,315.
Taxpayers timely filed their 1985 NJ-1040 Resident Income Tax Return, and attached a copy of the Federal Schedule K-l (“Partner’s Share of Income, Credits, Deductions, etc.”) Form 1065, issued by Peat Marwick (K-l), together with copies of various other state income tax returns filed by Taxpayers for tax year 1985, and their Schedule E (“Supplemental Income and Loss (From rental real estate, royalties, partnerships, estates, trusts, REMICs, etc)”) to the Federal Form 1040 (the individual income tax return).
The 1985 K-l requires a partnership to set out, for information purposes, each partner’s “distributive share item(s)”[4] of the following categories of income and deduction: (i) “Income (Loss)”, which includes items of “net” ordinary income (loss) of the partnership and requires the partnership to set out separately: Guaranteed Payments to the individual partners; Dividends qualifying for the (then) allowable exclusion from Federal gross income; Net short-term (and long-term) capital gain (loss); Net gain (loss) under IRC § 1231;[5] and any “Other” income; (ii) “Deductions”, *492 including charitable contributions set out in accordance with the applicable percentage limitation categories of IRC § 170(b); IRC § 179 expense deductions (ie. whereby a taxpayer takes an immediate expense deduction rather than a depreciation deduction)[6]; IRA payments; 401(k) and Simplified Employee Pension Plan payments; and “Other” Deductions; (iii) “Credits”, including Jobs Credits, Credit for Alcohol Used as Fuel, Credit for Income Tax Withheld and “Other” credits; (iv) “Net Earnings From Self Employment”, in conjunction with the computation of the self employment tax; (v) “Tax Preference Items”; (vi) “Investment Interest expense items”; (vii) “Foreign Taxes”; (viii) “Other items and amounts not [previously] included ... that are required to be reported separately ...”; and (ix) “Investment Credit and Investment Credit Recapture Items”. In general, the Schedule accommodates the requirements of IRC § 703(a)(1) that “[t]he taxable income of a partnership ... be computed in the same manner as in the case of an individual [ie. the netting process whereby the partnership’s “ordinary income (loss)” is determined], except that ... (1) the items described in section 702(a) shall be separately stated____” The items set out in IRC § 702(a) are items which, if separately earned or incurred by the individual partner (ie. not in his capacity as a partner), would result in an income tax liability for that partner different from the income tax liability which would result if the item had been netted with other partnership items and passed out as part of the partner’s distributive share of the partnership’s “ordinary income (loss)”.[7] For example, Tax *493 payers’ itemized deduction available under IRC § 170 for its share of the Contributions paid by Peat Marwick was entered on the 1985 Federal K-l as a separately stated item. IRC § 170(b) would require Taxpayers to aggregate all Contributions, whether made by them individually, or by allocation from Peat Marwick or any other “pass through” entity in which they may have had an interest, in the taxable year and apply the percentage limitations of IRC § 170(b) to this total in order to determine the deduction allowable for the 1985 taxable year.[8] The 1985 K-l therefore directs a taxpayer to the Instructions to Federal Form 1040 Schedule A to complete the calculation. Lumping the Contributions together with the “ordinary” income and expense items of the partnership at the entity level might lead to the avoidance of the IRC § 170(b) percentage limitations at the partner level, with a resultant distortion of Federal taxable income. In similar fashion, the 1985 K-l required that items of capital gain and loss be passed through separately to the individual partners in order that the netting process and the limitation on deductibility of capital loss apply at the partner level. See IRC §§ 1201 to 1297.
In computing their New Jersey Gross Income Tax liability (N.J.S.A. 54A:5-1, to :10-12) Taxpayers deducted the $3,815 in Contributions set out on the Peat Marwick K-l and the $7,488 in *494 the (unreimbursed) Direct Expenses, reported on Taxpayers’ Schedule E from the sum of the Schedule K-l distributive share items of income.
The Director’s Final Determination of Taxpayers’ 1985 tax, issued on December 15, 1992, disallowed the deductions for both the Contributions and the Direct Expenses.
The parties agree that the Final Determination included no explanation of denial of the deduction for the Direct Expenses. As to the Contributions, it provided “(n)o deduction is allowed for charitable contributions which are not deductible directly by the partnership against ordinary income.”
In March, 1994, Taxpayers filed a motion for summary judgment. That motion was brought on two bases: (1) that Director’s failure to identify any legal or factual basis for the disallowance of the deductions was violative of the principles of equity, fairness and due process; and (2) that notwithstanding the absence of any basis for disallowance, the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 to :10-12, mandates that such deductions be allowed. The Director filed a cross-motion for summary judgment contending that the expenditures in question were not properly deductible in determining Taxpayers’ “distributive share of partnership income” under the New Jersey Gross Income Tax Act. While Taxpayers’ motion was pending, the Director articulated the following bases for disallowance of the deductions:
As To The contributions:
The Division disallowed the deduction claimed by Mr. and Mrs. Sabino in their Gross Income Tax category “net [sic] distributive share of partnership income” for $3,315 of Section 501(c)(3) Payments allocated to Mr. Sabino by Peat Marwick on Mr. Sabino’s Schedule K-l because (i) as a matter of law expenditures reported by Peat Marwick on its Partnership Return solely as charitable contributions are in all cases not deductible for purposes of determining the net distributive share of partnership income for New Jersey Gross Income Tax purposes of a partner therein, and (ii) even if the reason set forth in clause (i) does not provide a proper basis for the denial, Mr. and Mrs. Sabino have not established to the Division’s *495 satisfaction that the Section 501(c)(3) Payments were ordinary and necessary business expenses of Peat Marwick’s business of accountancy.[9]
As To The Direct Expenses:
The Division has disallowed the deduction claimed by Mr. and Mrs. Sabino in their Gross Income Tax category “net [sic] distributive share of partnership income” for the $7,488 of Direct Expenses because (i) Peat Marwick did not pay such expenditures in the course of its business of accountancy, did not claim a deduction for them in determining its taxable income from its business of accountancy, was not entitled to claim a deduction for them in determining its taxable income from its business of accountancy and did not specifically allocate such a deduction to Mr. Sabino, and (ii) even if the reasons set forth in clause (i) do not provide a proper basis for the denial, Mr. and Mrs. Sabino have not established to the Division’s satisfaction that the Direct Expenses were ordinary and necessary expenses of Peat Marwick’s business of accountancy.
Subsequent to oral argument on the cross motions for summary judgment and prior to this Court’s issuance of its decision on the merits of those motions, the Director withdrew the 1985 Gross Income Tax assessment relating to the items at issue in this case. The Director then moved for dismissal of the Complaint for lack of standing and mootness. The Court denied that motion by oral opinion, concluding that an actual controversy, which was bona fide and adversarial in nature, persisted between the parties and was cognizable under the Declaratory Judgments Act, N.J.S.A 2A:16-51.[10] It was further found that the Act’s *496 stated purpose, to “settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations”, was met by treating Taxpayers’ claim as one for declaratory relief. N.J.S.A. 2A:16-51. Hungerford & Terry, Inc. v. Geschwindt, 24 N.J.Super. 385, 393, 94 A.2d 540 (Ch.), aff'd 27 N.J.Super. 515, 99 A.2d 666 (App.Div.1953). “[A] declaratory judgment may be rendered under N.J.S.A. 2A:16-53 where there is an actual controversy between the parties which involves differing views on the meaning of applicable statutory provisions.” N.J. Ass’n for Retarded Citizens v. New Jersey Dept. of Human Services, 89 N.J. 234, 242, 445 A.2d 704 (1982) (citations omitted). See also Union County Bd. of Chosen Freeholders v. Union County Park Comm’n, 41 N.J. 333, 336, 196 A.2d 781 (1964); Hammond v. Doan, 127 N.J.Super. 67, 72, 316 A.2d 68 (Law Div.1974).
At oral argument of the Director’s motion to dismiss, it was represented that the Director would change his position with respect to the deductibility of the Direct Expenses in future taxable years. The Director’s position was stated by counsel as follows:
What the revised reg.[11] [sic] .-will provide is that if an expense would have been deductible by the partnership if it had been incurred directly by the partnership rather than by a partner, then it will be deductible by the partner if the partner does one of two things. And [sic] the first thing the partner can do is attach a statement to his tax return ... signed by the tax matters partner as defined for federal purposes, if there is any, in which the [tax matters] partner, under penalties of perjury, describes in detail what the particular costs or expenses to which the statement relates [consist of] and [that] these are costs and expenses [were] incurred directly by the partner, ... [and] the tax matters partner states that he has reasonable grounds to believe that such costs and expenses were ordinary and necessary ... costs and expenses of the partnership’s business and also the tax matters partner states that the ... partnership and the partners have agreed on three points: (1) that the economic burden of such costs and expenses be borne by the [individual] partner; (2) the partnership has not reimbursed and will not reimburse the partner for the expense; and (3) that the partnership has allocated to the partner who incurred the expense the deduction____ The second alternative *497 is if the partner who is seeking the deductible expense on his gross income tax return attaches to this return other evidence to demonstrate the facts that would have been contained in the tax matters partner’s statement and clearly and convincingly proves that such cost and expense was an ordinary and necessary cost and expense of the partnership’s business.
Clearly, while Taxpayers concurred in the Director’s change in position with respect to the threshold requirement for deductibility being “if the expense would have been deductible by the partnership ... then it will be deductible by the partner ... ”, the controversy continues over the standard for deductibility. That is, Taxpayers do not agree that the Director’s “ordinary and necessary” standard is within the contemplation of N.J.S.A. 54A:5-lb. That disagreement continues notwithstanding the Director’s intention with respect to an amended regulation.
In like fashion, the controversy continues with respect to the contributions. At oral argument of the motion to dismiss, the Director’s position was explained as follows:
[t]he individual [sole proprietor] taxpayer’s characterization of an item on his Federal tax return, or in the case of a partnership, ... the partnership’s characterization of an item on ... [its] partnership tax return ... for example, if a partnership characterizes a particular payment as [a] charitable contribution deductible under Section 170 for Federal income tax purposes, the Director can rely on that characterization ... as indicating that the expense is not an ordinary and necessary expense of the partnership’s business____ [Stated differently], [if a] sole proprietor on his Federal tax return characterized a payment to a charity as a charitable contribution deductible under 170 yet sought to deduct that payment as a business expense for Gross Income Tax purposes, ... [the Division] could conclusively rely on his characterization of the item on his Federal return..... [T]he taxpayer cannot rebut the presumption by providing evidence to the Director. The only way [to change the result would be by] ... the taxpayer ... in the sole proprietor’s case, or the partnership, in the partnership’s case, ... filing an amended [Federal] return____ And changing it on the Federal return.
Taxpayers disagree with the Director’s stated interpretation as to the standard for deductibility of the Contributions in two respects. First, Taxpayers do not agree that the character of the contributions under the Gross Income Tax Act turns upon the character of the contributions for Federal income tax purposes. Second, Taxpayers do not agree that the “ordinary and necessary” standard applies to determine the deductibility of the contributions, any more than it applies with respect to the Direct Expenses.
*498 The Taxpayers and the Director continue to have “genuine” disagreement regarding Taxpayers’ reporting responsibilities under N.J.S.A. 54A:5-1 to :10-12 and the Director’s regulations, as to both the Direct Expenses and as to the contributions. Unquestionably, Taxpayers have the legal right to know the meaning of the law and its impact on their tax liability so that they may properly account to the State of New Jersey. The Director’s withdrawal of the contested assessments has no binding effect upon the Division’s future conduct and does not relate to the underlying issues in this matter; that is, to the meanings and proper interpretations of the statute and regulations. Accordingly, we turn now to the substantive issue which remains — the standard for deductibility under the Gross Income Tax Act of the contributions and Direct Expenses.
I
Can charitable contributions made by a partnership and reported on a Federal return as being deductible pursuant to IRC § 170 be deducted by an individual partner under N.J.S.A. 5lA:5~l(k)? Must Taxpayers demonstrate that the contributions were “ordinary and necessary” expenses of the partnership’s business, or merely that they were “incurred in the conduct of the partnership’s business”?
While the Gross Income Tax Act includes “distributive share of partnership income” as a category of items falling within the definition of New Jersey “gross” income, nowhere does it define this term.[12] This lack of definition, when coupled with the significance of that term under Federal law, led, in the early years following the enactment of the Gross Income Tax, to confusion as to its meaning under the Act. Smith v. Director, Div. of Taxa *499 tion, 108 N.J. 19, 527 A.2d 843 (1987) (Smith) resolved the conflict by rejecting the Federal law definition.
A The ordinary and necessary standard for deductibility set out in IRC §162 does not apply under N.J.S.A 54A:5-lb.
The parties agree that, “insofar as income derived from a business conducted in proprietorship or partnership form is concerned, [the Gross Income Tax Act] imposes a tax on net income.” Smith, supra, 108 N.J. at 26-27, 527 A2d 843 (quoting opinion below, Smith v. Director, Div. of Taxation, 7 N.J.Tax 187, 194 (Tax 1984). They agree that Taxpayers’ net income from the Peat Marwick partnership interest should be determined “after provisions for all costs and expenses incurred in the conduct thereof’, as provided under N.J.S.A 54A:5-lb, and that the net income so derived will be subject to tax at the partner level, whether distributed or not. In general, Taxpayers contend that the phrase “all costs and expenses” as it is used within N.J.S.A. 54A:5-lb, was held by the Supreme Court in Smith to mean just that; that is, that the “ordinary and necessary” standard for deductibility borrowed by the Director from the Federal law must be rejected in favor of the following — “was the expense incurred in the conduct of the partnership’s business?”
The Director contends, relying upon N.J.AC. 18:35-1.14(c) (adopted March 7,1994, 26 N.J.R. 1241(b)), and in particular, upon Example 7, that only those expenses which are deductible under the provisions of IRC § 162 (that is as “ordinary and necessary” expenses)[13] may be used to compute a partner’s “distributive *500 share” of income for New Jersey Gross Income Tax purposes. The Director argues that if contributions are reported by the Partnership as deductible by a partner under the authority of IRC § 170, they are conclusively presumed not to constitute ordinary and necessary expenses, with the result that they may not be used to reduce a partner’s New Jersey distributive share.
The Supreme Court’s analysis of N.J.S.A. 54A:5-lk in Smith, supra, was clear and unambiguous.
We disagree that the Legislature patterned the ... Gross Income Tax Act on the Internal Revenue Code____ No evidence has been presented that the Legislature intended to equate “distributive share” ... or ... “income” and “gain” "with analogous terms used in the Internal Revenue Code. Moreover, when the Legislature intended to incorporate federal income tax concepts, it did so explicitly— The Act’s legislative history dearly indicates that the Legislature intended to and did reject the federal income tax model in favor of a gross income tax act in order to avoid tax loopholes under federal law. Since the Legislature rejected the federal model of taxing income, other branches may not superimpose the Code upon the Gross Income Tax Act in the guise of statutory construction.
[Smith, supra, 108 N.J. at 32-33, 527 A.2d 843 citations omitted].
The “ordinary and necessary” standard set out in IRC § 162, not being expressly incorporated into either of subsections N.J.S.A. 54A:5-lb or k, cannot be engrafted thereon by either the court or the Director. The Legislature simply did not manifest any intent to equate “all costs and expenses incurred in the conduct [of business]” in N.J.S.A 54A:5-lb with IRC § 162’s “ordinary and necessary expenses paid or incurred ... in carrying on any trade or business.”[14]
*501 As the Court in Smith, supra concluded that the Legislature did not intend to “exclude income that would clearly fall into other categories if it were not earned in the regular course of a business”, from inclusion in a partner’s distributive share of partnership income, 108 N.J. at 27, 527 A2d 843, so we must conclude that the Legislature intended that partners, like sole proprietors, would deduct all costs and expenses incurred in the reguiar course of their business. The Court there articulated that the crucial inquiry for purposes of N.J.S.A 54A:5-lb was whether the expense was incurred in the conduct of the ordinary (or regular) business, profession or other activity of the partnership.
We hold, under Smith and in accordance with the plain and unambiguous language of N.J.S.A 54A:5-lb, that the standard for deductibility of an expense of a partnership is whether the expense was paid or incurred in the conduct of the business, profession or other activity of the partnership. This conclusion is fully consistent with N.J AC. 18:35-1.25(c) and (d)(2), which provide, as to a business, profession or other activity conducted as a sole proprietorship:
(c) A taxpayer’s net profits from business shall be determined by taking into account all costs and expenses incurred in the conduct thereof, except no deduction shall be allowed for taxes based on income____ No deduction shall be allowed for any expense or loss which is not incurred in the ordinary course of the conduct of the taxpayer’s trade or business.
(d) ... (2) A taxpayer’s net profits from business shall be determined by taking into account expenses or losses incurred in the conduct of the taxpayer’s trade or business which are properly deductible in accordance with the taxpayer’s method of accounting,[15] even if such deductions relate to expenses incurred in earning *502 business income exempt from taxation under the Gross Income Tax Act, or expense which are partly or wholly nondeductible for Federal income tax purposes or expenses under rules which limit the deductibility of particular business expenses under the Internal Revenue Code.
We specifically reject, as we must under' Smith, the Federal standard for deductibility contained in IRC § 162 and the Regulations thereunder. While, it is now unnecessary for us to decide whether the contributions would have been an allowable deduction under this standard, we note that, there being no dispute that the payment of the contributions occurred in the conduct of the partnership’s business, it would seem that Taxpayers have met the standard.
In Smith, supra, the Court explained the statute’s foundation in what it termed the “sound economic practice” of matching income with the expenses to produce such income:
Here, business expenses incurred by a partnership in the ordinary course of its business are being applied against that partnership’s income, also earned in the ordinary course of its business. No business expenses are being applied against income derived from an unrelated source.
We emphasize the limits of this decision. Items of income realized outside the scope of a business are to be allocated to the other categories of income listed in N.J.S.A 54A:5-1.
[Smith, supra, 108 N.J. at 31, 527 A.2d 843.]
This decision merely applies that reasoning.

B. The characterization of a payment as deductible under IRC § 170 as opposed to under IRC § 162 is irrelevant for purposes of N.J.S.A 5fA:5-lb and k.

It follows from what we have determined above, that the character of a payment as deductible for Federal income tax purposes under IRC § 170, as opposed to § 162, is irrelevant to its deductibility for New Jersey Gross Income Tax purposes. *503 There is no authority for the Director’s conclusion that items characterized as charitable contributions for Federal purposes be conclusively presumed to fall outside of the standard for deductibility under N.J.S.A. 54A:5-lb.[16] As indicated in our discussion of the format of the K-l, charitable contributions are required to be separately stated from partnership net income (loss) for a very specific reason — that is, in order that the IRC § 170(b) limitations apply at the partner level. The standard for deductibility of a payment to an IRC § 501(c)(3) organization as a trade or business expense under IRC § 162 has no connection with the standard therefor under N.J.S.A 54A:5-lb and k. Suffice it to say that the tension between IRC § 162 and § 170 has the objective of preventing avoidance of the percentage limitations under § 170 by classifying a payment as a § 162 expense; not disallowing a deduction in its entirety.[17] The attempted distinction between “business” and “non-business” charitable contributions made in N.J.AC. 18:35-14, example 7, engrafts upon the Gross Income Tax Act’s standard a mutated version of the Federal law character (“deductible under § 170 vs. deductible under § 162”.) Example 7 must be disregarded as an impermissible extension of the statute.[18] GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 625 A.2d 468 (1993).
*504 II

Can unreimbursed expenses be deducted by an individual partner as business expenses incurred in the course of partnership business under the New Jersey Gross Income Tax Act?

In light of the Director’s determination to amend N.J.AC. 18:35 — 14(c)7, resolution of whether a partner’s unreimbursed expenses may be deducted is accomplished simply by reference to the standard which we held above to be provided under N.J.S.A 54A:5-lb — “paid or incurred in the conduct of the business, profession or other activity of the partnership.” As with respect to the Contributions, it is unnecessary for us to decide whether the Direct Expenses would have been an allowable deduction under the standard articulated today. It would appear, however, that as the Director has abandoned N.J.AC. 18:35-14.1(c)7, the only issue is whether the Expenses were incurred in the conduct of the partnership’s business. Defendant did not oppose this characterization and, therefore, the Direct Expenses would have been deductible.
For all of the foregoing reasons, judgment will be entered reversing that portion of the Director’s Final Determination as regarded the contributions and the Direct Expenses and declaring that: (i) the standard for deductibility of a partnership expense is the standard set out in N.J.S.A. 54A:5-lb, that is whether the expense was paid or incurred in the conduct of the business, profession or other activity of the partnership; (ii) N.J.AC. 18:35-1.14(c)7 (which the Director has abandoned) is void and of no further force or effect; and (iii) Example 7 of the Regulation is void as an impermissible extension of N.J.S.A 54A:5-lb and k.

 N.J.S.A. 54A:5-1 provides in part:
New Jersey gross income shall consist of the following categories of income: ... b. Net profits from business. The net income from the operation of a business, profession, or other activity, after provisions for all costs and expenses incurred in the conduct thereof, determined either on a cash or accrual basis in accordance with the method of accounting allowed for federal income tax purposes but without deduction of taxes based on income....
k. Distributive share of partnership income.
Under the provisions of NJ.S.A. 54A:5-4, the partnership entity is not itself subject to the Gross Income Tax, however "[T]he income or gain of a member of a partnership ... [is] subject to the tax and the tax [is] imposed upon [each partners'] share, whether or not distributed, of the income or gain received by the partnership ... for its taxable year____” In this regard the scheme of partnership taxation under the Gross Income Tax is similar to that under Federal law.

 Taxpayers and the Director agree that, under the terms of the Partnership Agreement, each of the partners will be a licensed certified public accountant in a state of the United States, actively engaged in the business of accountancy.

 Under the provisions of IRC § 170 payments of charitable contributions are deductible, subject to certain percentage limitations set out in § 170(b), against an individual taxpayer’s adjusted gross income, as an itemized (Schedule A) deduction. The term “charitable contribution” is defined at IRC § 170(c) to include, in general, payments made within the taxable year to corporations, organizations, trusts and foundations which themselves enjoy an exemption from Federal income taxation pursuant to the provisions of IRC §§ 501 to 505. This *491 exemption relates to the purposes for which an organization exists and the activities carried on by it. The deductibility of the Contributions under IRC § 170 is undisputed.

 IRC § 704(a) provides that a partner's "distributive share" of "income, gain, loss, deduction, or credit shall, except as otherwise provided in this chapter, be determined by the partnership agreement." The section continues to provide that a partner's “distributive share” of
"income, gain, loss, deduction or credit (or item[s] thereof) shall be determined in accordance with the partner's interest in the partnership (determined by taking into account all facts and circumstances), if—
(1) the partnership agreement does not provide as to the partner's distributive share of income, gain, loss, deduction or credit (or item thereof), or
(2) the allocation to a partner under the agreement of income, gain, loss, deduction, or credit (or item thereof) does not have substantial economic effect.

 Under the provisions of IRC § 1231 certain items of gain and loss are netted to determine their character as capital or ordinary. Because the netting process *492 must take place at the partner (as opposed to partnership) level, separate statement is required. Individual partners will include "§ 1231 gains and losses” from the partnership with any other "§ 1231 gains and losses" they might have realized in the taxable year in order to determine their overall result.

 The expense deduction provided by IRC § 179 is subject to limitations to be applied at the partner level. Accordingly it is separately stated.

 See Regs. 1.702-1 which provides, in part:
(a) General rule. Each partner is required to take into account separately in his return his distributive share, whether or not distributed, of each class or item of partnership income, gain, loss, deduction or credit described in *493 paragraphs (I) through (9) of this paragraph.... Accordingly, in determining his income tax: ...
(4) Each partner shall take into account, as part of the charitable contributions paid by him, his distributive share of each class of charitable contributions paid by the partnership within the partnership’s taxable year. Section 170 determines the extent to which such amount may be allowed as a deduction to the partner. For the definition of the term "charitable contribution’’, see section 170(c).
This income tax accounting treatment clearly reflects the nature of the partnership, a creature of state law, as an aggregate of its members.

 IRC § 170(b) provides a limitation on the amount of an individual’s (or corporation's) deduction in any given taxable year. For individuals the limitation is expressed as a percentage of "adjusted gross income". In general, in tax year 1985, there were three limitations, 50%, 30% and 20% depending on the nature of the recipient organization (i.e. "public” vs. "private" charities), and the character of property gifted (i.e. cash vs. property with unrecognized capital gain.)

 The Director refers to the Contributions as “Section 501(c)(3) Payments" apparently to mean that the payments were in the nature of deductions allowable under IRC § 170.

 Interestingly, under similar circumstances, the United States Tax Court ruled that the IRS's withdrawal of a deficiency assessment after a petition contesting the deficiency was filed with the Tax Court does not deprive the court of jurisdiction. Bowman v. Commissioner, 17 T.C. 681, 1951 WL 252 (1951); In Bowman, the Court stated that once it acquired jurisdiction:
this Court may not be ousted from that status by action of the respondent nor deprived of its right to enter a final decision with respect to the petitioner’s tax liability for that year ... A litigant in a matter before a court of competent jurisdiction who brings the other party into court is entitled to an ultimate judgment. [Id. at 685.]
In another United States Tax Court matter addressing the issue of jurisdiction, the court found that:
*496 it is not the existence of a deficiency but the Commissioner’s determination of a deficiency that provides a predicate for tax court jurisdiction.
[Hannan v. Commissioner, 52 T.C. 787, 791, 1969 WL 1549 (1969).]

 Referring to NJ.A.C. 18:35-1.14(c)7.

 The phrase "distributive share of partnership income" is a term of art in the field of taxation. In general, it refers to the manner in which the partners’ agreement addresses the division and allocation among them of "income, gain, loss, deduction, or credit ..." ¡ of the partnership entity. IRC § 704. See Uniform Partnership Act, N.J.S.A. 42:1-1 to -43.

 IRC § 162 provides in part:
(a) In general. — There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and
*500 (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity____
(b) Charitable Contributions and Gifts Excepted. — No deduction shall be allowed under subsection (a) for any contribution or gift which would be allowable as a deduction under section 170 were it not for the percentage limitations, the dollar limitations, or the requirements as to the time of payment set forth in such section----

 IRC § 162 and the regulations issued thereunder have spawned an enormous body of Federal law. The stated standard under IRC 162 ("ordinary and necessary") has become “ordinary, reasonable and necessary” over the years. We are at a loss as to how the Director would pick his way through this body of *501 law (replete with the interrelationship with other IRC sections) to find that portion which is consistent with Gross Income Tax principles.

 In general, a taxpayer's method of accounting will affect the timing of his (her, its) inclusion of items of income and allowance of items of loss and deduction. For example, cash basis taxpayers will take items into income and be entitled to deduct items in the taxable year when the income is received and the expense paid. Accrual basis taxpayers will look to the taxable year in which all events have occurred fixing their right to income and their obligation to pay, which may occur in a taxable year different from that in which payment is received or made. The method of accounting is thus a procedural aspect. It has *502 of course no effect upon the substantive issues of includibility/deductibility of items of income and deduction.

 We note, but need not here address, that the effect of the Director’s “irrebuttable (conclusive) presumption” is the creation of substantive law. Clearly, the Legislature alone possesses this power.

 See Regs. § 1.162-15. "In general. No deduction is allowable under § 162(a) for a contribution or gift by an individual or corporation if any part thereof is deductible under section 170. For example, if a taxpayer makes a contribution of $5,000 and only $4,000 ... is deductible under section 170(a) ... no deduction is allowable under section 162(a) for the remaining $1,000.”

 It must be noted that the attempted categorization of "business" vs. “non-business” charitable contributions does not exist under Federal law, where the classification is either "trade or business deduction" or “charitable contribution deduction”. The premise of the Director’s conclusion has no viability.